# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ZUFFA, LLC, a Nevada limited liability company, | Case No.: 2:07-cv-00369-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss - #16<br>Motion for Leave of Court - #23) |
| SHOWTIME NETWORKS, INC., a New York corporation, and PROELITE, INC., d/b/a Elite XC, a California corporation, | |
| Defendants. | |

      Before the Court is Defendants Showtime Networks, Inc. ("Showtime") and ProElite, Inc., d/b/a Elite XC's ("ProElite") **Motion to Dismiss for Lack of Personal Jurisdiction** (#16), filed April 30, 2007. The Court has also considered Plaintiff Zuffa, LLC's ("Zuffa") Opposition (#20), filed May 18, 2007, Plaintiff's Supplement (#21), filed May 21, 2007, and Defendants Reply (#22), filed June 1, 2007.

      Also before the Court is Plaintiff's **Motion for Leave of Court to File a Declaration in Sur-Reply to Defendant's Reply** (#23), filed June 6, 2007. No Opposition has been filed.

/ / / /

1

AO 72
(Rev. 8/82)

**BACKGROUND**

This case arises from the use of footage shown in connection with a Mixed Martial Arts ("MMA") event held on February 10, 2007, at the Desoto Civic Center in Southhaven, Mississippi ("Mississippi Event"). The footage was produced by Defendant ProElite, a California corporation with its principal place of business in Los Angeles, California, and telecasted by Defendant Showtime, a Delaware corporation with its principal place of business in New York. Plaintiff, a Nevada limited liability company with its principal place of business in Las Vegas, Nevada, brings this suit claiming that as the copyright owner of the footage, it did not consent or authorize Defendants to use the footage. Plaintiff is a promoter of MMA contests and conducts business as the Ultimate Fighting Championship Brand ("UFC"), a registered trademark. Plaintiff asserts that it owns registered copyrights for each UFC event held since its inception in 1993, including the copyrights for the footage shown during the Mississippi Event.

The use of the footage came about through a contract entered into by ProElite and Showtime, whereby Showtime agreed to telecast a series of MMA events featuring fighters affiliated with ProElite. For the Mississippi Event, ProElite planned to telecast a segment at the beginning of the event that would trace the history of two competitors fighting in the main event. One of the competitors was Frank Shamrock ("Shamrock"). ProElite contacted Shamrock to obtain some footage of his prior fights. According to Defendants, Shamrock gave ProElite authority to use the footage in Showtime's telecast of the Mississippi Event. ProElite subsequently incorporated the footage, along with other pieces of historical reference, of Shamrock and another MMA fighter into a less than one-minute long segment that appeared at the beginning of the telecast of the Mississippi Event.

Following the telecast of the footage, Plaintiff instituted the current action alleging copyright infringement and unfair competition claims. Defendants now move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons discussed below, Defendants' Motion is granted with respect to ProElite and a ruling is

deferred with respect to Showtime.

## DISCUSSION

### I. Plaintiff's Motion for Leave of Court to File a Sur-Reply

In its Motion, Plaintiff requests leave to file the declaration of Michael F. Lynch ("Lynch") in response to William Kelly's ("Kelly") declaration, which was submitted by Showtime and ProElite in support of their Reply. Plaintiff alleges that Defendants' Reply and Kelly's declaration contains factual inaccuracies that must be corrected to provide the Court with accurate and complete information as necessary for determination of the issues at bar. Along with its Motion, Plaintiff attached the proposed declaration of Lynch. Given that there are no objections by ProElite or Showtime and that the declaration addresses a relevant issue, the Court grants Plaintiff's Motion.

### II. Defendants' Motion to Dismiss

#### A. Standard

Where a defendant brings a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (citations omitted). To withstand a defendant's motion to dismiss, the plaintiff need only make a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits. *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1071 (9th Cir. 2001). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys. Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### III. Personal Jurisdiction

Where, as here, jurisdiction is based on diversity of citizenship, the power of the federal court to exercise personal jurisdiction over a nonresident defendant turns on a two-step inquiry. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). First,

whether a state statute confers personal jurisdiction over the nonresident defendant. Second, whether the exercise of personal jurisdiction comports with the defendant's constitutional due process rights. *Id*. Because Nevada's long arm statute has been liberally construed to reach the outer limits of federal constitutional due process, *see* Nev. Rev. Stat. § 14.065; *Galatz v. Eighth Judicial Dist. Court,* 683 P.2d 26, 28 (Nev. 1984), the essential inquiry becomes whether the exercise of jurisdiction comports with the defendant's constitutional due process rights.

Due process requires that the defendant has minimum contacts with the forum such that the maintenance of the suit will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). By applying the minimum contacts analysis, a court may obtain either specific or general jurisdiction over the defendant. *Doe v. Unocal Corp.,* 248 F.3d 915, 923 (9th Cir. 2001).

**A. General Jurisdiction**

The exercise of general jurisdiction is appropriate only where the defendant's activities in the forum state are so "substantial" or "continuous and systematic," *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that it "approximates physical presence" in that state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). This is an exacting standard because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). In determining whether to exercise general jurisdiction, the court should consider "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters, Inc.*, 223 F.3d at 1086 (citation omitted). The court should also focus upon the "economic reality" of the defendant's activities rather than a mechanical checklist. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

Even if substantial, or continuous and systematic contacts exist, the assertion of general jurisdiction must be reasonable. *See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852-53 (9th Cir. 1993).

**1. Defendant Showtime**

Plaintiff claims that Showtime's marketing and business activities in Nevada rise to the level of substantial, continuous and systematic contacts such that general jurisdiction is appropriate. For support, Plaintiff points to the following contacts: (1) Showtime broadcasts are available in every Nevada home and business with cable, DirecTV, or Dish Network service; (2) Showtime specifically targets advertisements of its services to Nevada residents; (3) Showtime attends and participates in industry conventions in Las Vegas on a regular basis; (4) Showtime operates an interactive website and web-based retail store that are available to Nevada consumers; and (5) Showtime regularly produces major boxing events in Nevada.

Plaintiff has a high burden of establishing that this Court has general jurisdiction over Showtime, and it bears mentioning that this high burden was not met in *Helicopeteras v. Nacionales de Columbia, S.A.*, 466 U.S. at 408. In that case, the nonresident defendant was a foreign corporation engaged in the business of providing helicopter transportation for oil and construction companies in South America. *Id*. The defendant was not registered to do business in Texas, maintained no records or had an office in Texas, never sold any product that reached Texas, and never solicited any business in Texas. *Id*. However, the defendant negotiated a contract in Texas, purchased a helicopter, spare parts, and accessories for more than $4 million from Texas, sent prospective pilots to Texas for training, sent management and personnel to Texas, and received over $5 million in payments drawn from a bank in Texas. *Id*. The Supreme Court held that the defendant's contacts with the state of Texas did not "constitute the kind of continuous and systematic general business contacts" necessary to establish general jurisdiction. *Id*.

In contrast to *Helicopeteras* is *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 (1952), wherein the Supreme Court found the exercise of general jurisdiction

appropriate. In *Perkins*, the nonresident defendant was a Philippine corporation whose mining operations were halted during war, which resulted in the president of the corporation returning to his home state of Ohio. *Perkins*, 342 U.S. at 447. There, the president maintained an office, kept office files of the company, distributed salary checks on behalf of the company, maintained two bank accounts holding substantial balances of the company's funds, held directors' meetings, and carried on correspondence relating to the company in Ohio. *Id*. at 447-48. The Supreme Court held that the president "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company," and as a result found the exercise of general jurisdiction proper. *Id.* at 448.

Given the high standard necessary to establish general jurisdiction, the presence of general jurisdiction in the instant case is a close question. To begin, like *Helicopteras*, the undisputed facts here are that Showtime is not registered to do business in Nevada, does not have any offices in Nevada, does not maintain any records in Nevada, does not pay taxes in Nevada, and does not have any employees, property, or bank accounts in Nevada. These facts militate against the finding of general jurisdiction. However, Showtime is no stranger to the forum. It is engaged in a nationwide business, whereby its programming is provided to consumers across the United States, including Nevada. Although it is unclear how many Showtime subscribers are in Nevada or the amount of revenue Showtime generates from those subscribers, the fact remains that Showtime has over 15 million subscribers nationwide, which presumably includes Nevada consumers.

Against this argument, Showtime asserts that having subscribers in Nevada is insufficient to confer general jurisdiction over it and for support cites *Boaz v. Boyle & Co*., 40 Cal. App. 4th 700 (Cal. 1995). In *Boaz*, the nonresident defendant had limited contacts with the forum state that consisted of targeting mailers to physicians, advertising principally in national medical publications, and deriving 9% of its sales from the forum's physicians. *Id.* at 715-17. Based on those contacts, the court found that the defendant's level of activity in the forum did not justify

the assertion of general jurisdiction. *Id.* at 717.

Like *Boaz*, Showtime's contacts are not viewed in isolation, but are taken collectively. Aside from the unknown percentage of Nevada subscribers and the revenue generated from them, Showtime's contacts with this forum far exceeds the contacts made in *Boaz*. Showtime's contacts in Nevada includes the broadcasting of its programming, attending industry conventions, producing twenty-seven (27) boxing matches, generating sales from its entertainment merchandise, and advertising locally. Each of these contacts when taken together with the number of subscribers and amount of revenue generated from the forum may establish general jurisdiction over Showtime. *See, e.g., Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1174 (9th Cir. 2006) (finding general jurisdiction over nonresident defendant, who was licensed to do business in the forum, maintained an office and staff of employees in the forum, advertised in purely local media, targeted forum consumers, and derived hundreds of millions of dollars in annual revenue from sales in the forum); *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (general jurisdiction exists where the defendant generated several millions of dollars in annual sales in the forum state and maintained a broad distributorship network in the forum state).

In addition to having subscribers in Nevada, Showtime has routinely visited the forum to participate in industry conventions and has placed local advertisements here. As evidence of Showtime's local advertising, Plaintiff points to the declaration of Michael L. Ward ("Ward"), senior vice president, deputy general counsel for Showtime, wherein he states that during the period of January 26, 2007, through February 4, 2007, Showtime placed an advertisement on a Las Vegas billboard for the Mississippi Event. Plaintiff offers no additional evidence to demonstrate the volume or frequency of Showtime's local advertisements. In the absence of such evidence, the Court cannot find that these contacts are substantial or continuous and systematic. *See Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) (no general jurisdiction existed where, among other things, the defendant attended trade shows and sales meetings in the forum state); *see also Munley v. Second Judicial Dist. Court*, 761

7

P.2d 414, 415-16 (Nev. 1988) (finding no general jurisdiction where defendant placed one advertisement in the forum's newspaper and placed an advertisement in the forum's telephone directory).

      Showtime also maintains a website and web-based store. In regards to asserting general jurisdiction based on a defendant's internet activity, many courts have applied the analytical framework set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)[1]. Under the *Zippo* framework, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id*. at 1124. The *Zippo* court outlined three areas into which internet activity can be categorized. *Id*. The first area encompasses those websites where a "defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id*.

      In the second area are passive websites whereby a "defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Id*. The third area lies somewhere between the first and second areas. This area is classified as the "interactive" websites in which "a user can exchange information with the host computer." *Id.* On this type of website, courts look to "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine whether jurisdiction should be exercised. *Id*. The mere existence of an interactive website is insufficient to establish general jurisdiction in the absence of proof of

---

[1] Although *Zippo* dealt with specific jurisdiction, *see Zippo Mfg*., 952 F. Supp. at 1112, some courts have used the framework when determining whether general jurisdiction exists. *See, e.g., Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (10th Cir. 1999); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002); *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F.Supp.2d 1013, 1019-20 (N.D. Cal. 2005).

1  continuous and systematic contact between the forum state and the website. *Coastal Video*
2  *Commc'n, Corp. v. Staywell Corp.*, 59 F.Supp.2d 562, 571 (E.D. Va. 1999).
3         In the case at bar, Plaintiff argues that Showtime's website is highly interactive
4  because it is available to all Nevada residents, it allows Nevada visitors to subscribe to
5  Showtime's channels through a link provided on the website, offers a subscription rebate to the
6  Las Vegas market for new subscribers, offers an online retail store through which Nevada
7  residents may purchase retail items directly from Showtime's site, and is presently promoting a
8  contest that is open to residents of Nevada.
9         As measured by the *Zippo* test, Showtime maintains an interactive website in which
10 users can exchange information with the host computer. In addition to this interactive nature,
11 Plaintiff must also show that the interactivity resulted in substantial and systematic contacts with
12 the forum. *See Coastal Video Commc'n Corp.*, 59 F. Supp. 2d at 571. Plaintiff has failed in this
13 regard. There is no evidence of the extent of Showtime's contacts through its website with the
14 forum. For example, evidence of the amount of sales generated from the forum through
15 Showtime's interactive website may be sufficient to establish jurisdiction. However, without such
16 evidence, Plaintiff fails to show how Showtime's website evidences its substantial and systematic
17 contacts with the forum.
18         As an additional basis for exercising general jurisdiction over Showtime, Plaintiff
19 asserts that Showtime regularly produces major boxing events in Nevada as evidence of its
20 substantial or continuous and systematic contacts with the forum. Showtime does not dispute that
21 it has produced at least twenty-seven (27) boxing matches in Nevada over the span of six years.
22 Taking Showtime's frequent presence in the forum in light of its other contacts suggest that
23 Showtime should have anticipated being haled into the forum.
24         At this juncture, the Court finds that there are insufficient facts in the record to
25 sustain a finding of general jurisdiction. Anticipating such a finding, Plaintiff's opposition to the
26 instant Motion requests the Court to allow additional time to conduct jurisdictional discovery

9

1   regarding the extent of Showtime's contacts in the forum, such as its advertising activities, the
2   number of subscribers to its programming and products, the revenues generated, and number of
3   residents who have made purchases through its website. On a motion to dismiss, a court has
4   discretion to allow a plaintiff to conduct jurisdictional discovery. *Harris Rutsky & Co. Ins. Servs.,*
5   *Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). "[D]iscovery should ordinarily
6   be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a
7   more satisfactory showing of the facts is necessary." *Laub v. U.S. Dept. of Interior*, 342 F.2d
8   1080, 1093 (9th Cir. 2003). Thus, given the gaps in the record as to the extent and economic
9   reality of Showtime's business activities within the forum, the Court finds that discovery is
10  necessary.
11          Accordingly, for the above reasons, the Court declines at this stage to grant
12  Showtime's Motion to Dismiss on grounds that general jurisdiction is lacking and grants Plaintiff
13  the right to conduct limited jurisdictional discovery on the issue.
14          **2. Defendant ProElite**
15          Plaintiff next contends that ProElite's contacts with Nevada are sufficient to confer
16  general jurisdiction over it. For support Plaintiff asserts the following activities: (1) ProElite has
17  contracted with Showtime to have its events aired nationwide, including in Nevada; (2) by way of
18  its contractual agreement, ProElite offers its services and programming directly to the Nevada
19  market; (3) ProElite's programming is also available for viewing by registered Nevada users of its
20  website; and (4) ProElite's website actively advertises live events that are to be held in Nevada.
21          Like Showtime, ProElite is neither incorporated nor has any offices in Nevada. In
22  fact, ProElite is a California corporation with its principal place of business in Los Angeles,
23  California. It does not have any employees in Nevada, does not pay any income or property taxes
24  in Nevada, does not have any records in Nevada, and besides the instant litigation, has never been
25  involved in litigation in Nevada. Aside from these facts, Plaintiff alleges that ProElite through its
26  contractual agreement with Showtime has engaged in substantial or continuous and systematic

10

1   contacts in Nevada. This argument fails. Both Showtime's and ProElite's contacts are viewed
2   independently, and thus Showtime's contacts with the forum are not imputed to ProElite. Thus,
3   the only contact Plaintiff claims that ProElite has made with the forum is through its website.
4   　　　In regards to ProElite's website, Plaintiff argues that its interactive nature alone
5   justifies this Court exercising general jurisdiction over it. ProElite's website can be classified as
6   interactive, whereby users can obtain information about ProElite and its MMA events and fighters,
7   register on the site, purchase and view MMA events, purchase promotional items, and post photos,
8   videos, and other content. In addition to these services, Plaintiff claims that ProElite's website
9   actively advertises live events that are to be held in Nevada.
10  　　　The fact that ProElite's website is interactive is insufficient by itself to establish
11  general jurisdiction. Plaintiff must offer evidence that through the website, ProElite is conducting
12  substantial or continuous and systematic business in Nevada. *See Revell v. Lidov*, 317 F.3d 467,
13  470-71 (5th Cir. 2002) (finding no general jurisdiction over nonresident defendant, despite the fact
14  that defendant's website allowed users to subscribe to a journalism review, purchase advertising,
15  and submit electronic admissions applications because the cited contacts with the forum were not
16  substantial.) There is no such evidence here.
17  　　　Although Plaintiff requests time to conduct jurisdictional discovery, the Court does
18  not find that such discovery will sustain a finding of general jurisdiction. Aside from ProElite's
19  website, there is no evidence of other traditional contacts that ProElite has had with the forum.
20  Without such evidence, the Court finds that general jurisdiction does not exist. *See Mieczkowski v.*
21  *Masco Corp.*, 997 F.Supp. 782, 788 (E.D. Tex. 1998) (finding that defendant's website *and*
22  traditional business contacts with the forum were sufficient to subject defendant to general
23  jurisdiction); *see also, Heroes Inc., v. Heroes Found.*, 958 F.Supp. 1, 5 (D.D.C. 1996)
24  (utilizing internet website *and* other contacts with the forum to sustain a finding that court could
25  exercise personal jurisdiction).
26  　　　Because there has been no showing of substantial or systematic and continuous

AO 72
(Rev. 8/82)

contacts with Nevada, the Court does not reach the second prong of the general jurisdiction inquiry and, consequently general jurisdiction will not be exercised over ProElite.

**B. Specific Jurisdiction**

"Absent general jurisdiction, specific personal jurisdiction over a defendant may be established only where the cause of action arises from the defendant's contacts with the forum." *Trump v. Eighth Judicial Dist. Court*, 857 P.2d 740, 748 (Nev. 1993) (citations omitted). To determine if the exercise of specific jurisdiction is proper over a defendant, the Ninth Circuit uses the following three-part test:

1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987) (citation omitted). A plaintiff need only satisfy the first two prongs of the test. *Schwarzenegger,* 374 F.3d at 802 (citation omitted). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* If, however, "the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

**1. Purposeful Direction**

Under the first prong of the specific jurisdiction test, Plaintiff must establish that Showtime and ProElite either purposefully availed themselves of the privilege of conducting activities in Nevada, or purposefully directed their activities toward Nevada. *See Schwarzenegger*, 374 F.3d at 802. Purposeful availment and purposeful direction are two distinct concepts. *Id*. "A purposeful availment analysis is most often used in suits sounding in contract," while "[a]

12

purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.* Here, Plaintiff's claim for copyright infringement sounds in tort, therefore a purposeful direction analysis is appropriate. As such, courts looks for "purposeful direction" under an "effects" test to determine if the defendant "(1) committed an intentional act, (2) expressly aimed at the forum, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

### i. Intentional Act

Plaintiff must first demonstrate that Showtime and ProElite committed an intentional act. Intent in the intentional act test is referred to as an intent to "perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Here, it is undisputed that Showtime and ProElite acted intentionally in telecasting the copyrighted footage during the Mississippi Event. Thus, Plaintiff satisfies the first prong of the effects test.

### ii. Express Aiming at the Forum State

Plaintiff must next establish that the intentional act of telecasting the copyrighted footage was expressly aimed at Nevada. Committing a foreign act with foreseeable effects in the forum state is not enough to confer specific personal jurisdiction, there must be "something more." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "Something more" is referred to as the express aiming requirement. *Id*. This requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

The express aiming requirement was satisfied in *Bancroft & Masters*, where a dispute arose over a domain name. *Id*. at 1082. In that case, the defendant sent a letter to the registrar of domain names in Virginia to challenge the plaintiff's usage of the domain name. *Id*. at 1085. As a result of the letter, the plaintiff, a California corporation, was forced to bring suit or lose control of its website. *Id*. The Ninth Circuit found that the defendant acted intentionally when

1  it sent its letter to the registrar of domain names. *Id*. at 1088. Further, the court found that the

2  letter was expressly aimed at California because it individually targeted the plaintiff, a California

3  corporation doing business almost exclusively in California. *Id*.

4         Here, Plaintiff alleges that Showtime and ProElite intentionally and wrongfully

5  used its copyrighted materials knowing that the impact of their actions would be felt by Plaintiff in

6  Nevada. In support thereof, Plaintiff asserts that it is widely known in the industry to be

7  headquartered in Las Vegas, Nevada, and that this fact was publicly acknowledged by ProElite.

8  Showtime and ProElite, however, argue that they did not know that Plaintiff was the copyright

9  owner of the footage and that they did not expressly aim their telecast at the forum. In light of

10 these contentions, the Court notes that it is undisputed that the copyrighted footage was telecasted

11 from South Haven, Mississippi, during the Mississippi event. Because the Mississippi event was

12 telecasted nationally, it was foreseeable that the copyrighted footage would be viewed in Nevada.

13        However, this foreseeable effect, without something more, is insufficient to show

14 that Showtime and ProElite individually targeted Plaintiff in Nevada. *Bancroft & Masters, Inc*.,

15 223 F.3d at 1087. The only fact that Plaintiff appears to offer as "something more" is that ProElite

16 and Showtime knew that Plaintiff was based in Nevada. Yet this knowledge by itself fails to

17 establish that Showtime and ProElite individually targeted Plaintiff. *See, e.g. Pebble Beach Co. v.*

18 *Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) (the fact that the defendant once lived in the forum

19 and therefore had knowledge of the plaintiff's golf resort went to the foreseeable effect prong of

20 the effects test and was not an independent act that could be interpreted as being expressly aimed

21 at the forum); *Schwarzenegger,* 374 F.3d at 807 (the fact that defendant may have known that

22 plaintiff lived in the forum was insufficient to show express aiming at the forum).

23        In *Bancroft & Masters*, the defendant was aware that the plaintiff held the disputed

24 website and that the plaintiff would be affected by the letter sent to the domain registrar. Unlike

25 *Bancroft & Masters*, there are no facts alleged here that Showtime and ProElite were aware that

26 the allegedly infringing footage belonged to Plaintiff or that Defendants knew or should have

AO 72
(Rev. 8/82)

known that the allegedly infringing footage would harm Plaintiff in Nevada.  Because Plaintiff fails to show that ProElite and Showtime expressly aimed the alleged infringing telecast at Nevada, Plaintiff has not met its burden of showing purposeful direction under the effects test.

Plaintiff's failure to meet the first prong of the specific jurisdiction test obviates the need for this Court to discuss the remaining two prongs of the test.  For the foregoing reasons, the Court finds that specific personal jurisdiction cannot be exercised over Showtime or ProElite.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (#16) is GRANTED with respect to Defendant ProElite and with respect to Defendant Showtime a ruling is DEFERRED until discovery is completed and the Parties have had an opportunity to supplement their pleadings.  The following schedule is outlined:

- As to Defendant Showtime, Plaintiff is GRANTED the right to conduct limited jurisdictional discovery, which discovery shall be completed within 60 days of the date of entry of this Order.
- The Court further notes that within fifteen (15) days of the completion of jurisdictional discovery, Plaintiff may supplement its Opposition, if any.  Within ten days thereafter, Defendant Showtime may supplement its Reply brief, if any.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave of Court to File a Declaration in Sur-Reply to Defendant's Reply (#23) is GRANTED.  The proposed declaration of Michael F. Lynch, which is attached to Plaintiff's Motion is deemed filed.

Dated: August 15, 2007.

_____
ROGER L. HUNT
Chief United States District Judge